IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SYNTROLEUM CORPORATION, <br> a Deleware corporation, <br><br> Plaintiff, <br><br> v. <br><br> FLETCHER INTERNATIONAL, Ltd., <br> a Bermuda company, <br><br> Defendant. | Case No. 08-CV-384-JHP-FHM |

## ORDER AND OPINION

Before the Court are Defendant Fletcher International, Ltd.'s Motion to Dismiss for Lack of Personal Jurisdiction [Docket No. 21], or in the alternative, Motion to Transfer Venue [Docket No. 22]; Plaintiff Syntroleum Corporation's Responses in Opposition [Docket Nos. 31 & 32]; and Defendant's Reply to the Responses [Docket No. 34]. Also before the Court is Defendant's Objection to the Affidavits of Ron Stinebaugh and Gary Roth [Docket No. 35]. For the reasons set forth below Defendant's Motion to Dismiss is GRANTED and Defendant's Objection is DENIED.

## BACKGROUND

Plaintiff Syntroleum Corporation ("Syntroleum") is a Delaware corporation with its headquarters and principle place of business in Oklahoma. Defendant Fletcher International, Ltd. ("Fletcher") is a Bermuda company with its principle place of business in Bermuda. In November 2007, the parties entered into an investment agreement ("Agreement") in which Fletcher agreed to purchase up to $12 million of Syntroleum common shares over a 24 month period, subject to certain conditions. Under the Agreement, Fletcher was to make an initial investment of $3 million. Due

to the alleged failure of Syntroelum to meet one of the conditions precedent to Flecther's obligation, the initial investment never occurred. In May 2008, Fletcher attempted to exercise its rights under the Agreement to purchase approximately $6 million shares of Syntroleum stock at a discounted price. Syntroleum notified Fletcher that, because Fletcher never made the initial investment, it was not entitled to make the later investment. On May 30, 2008, Syntroleum filed a lawsuit against Fletcher in the District Court of Tulsa County, Oklahoma, for breach of contract, rescission, and declaratory judgment of its rights and obligations under the Agreement. On June 27, 2008, Fletcher filed a lawsuit for breach of the Agreement against Syntroleum in the United States District Court for the Southern District of New York. Subsequently, Fletcher removed the lawsuit filed by Syntroleum to this Court and filed this Motion to Dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. In the alternative, Fletcher seeks to transfer venue to the Southern District of New York.

## **DISCUSSION**

### **I. Motion to Dismiss**

The purpose of allowing a jurisdictional challenge such as the one raised here is to protect a defendant who has no meaningful contact with a state from being forced to litigate in an unfamiliar and potentially unfair forum. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998). Where, as here, the Court determines that an evidentiary hearing is not necessary, the plaintiff must only make a *prima facie* showing that jurisdiction is appropriate in order to overcome such challenge. *Id.* at 1091. The defendant must then present a compelling case that the exercise of jurisdiction would somehow be unreasonable. *Id.* At this early stage of litigation, the plaintiff's burden is light, and all doubts must be resolved in plaintiff's favor. *Intercon, Inc. v. Bell*

*Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000).

To establish personal jurisdiction over the defendant, the plaintiff must show that jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process. *Id.* Because Oklahoma's long-arm statute permits any exercise of jurisdiction consistent with the U.S. Constitution, the personal jurisdiction inquiry conflates into a single due process inquiry. *Id.* Due process requires "only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The existence of such minimum contacts must support the exercise of either general or specific jurisdiction. In this case, Syntroleum only argues that Fletcher is subject to specific jurisdiction.

Specific jurisdiction analysis involves a two-step inquiry. First, the Court must determine whether "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "Second if the defendant's actions create sufficient minimum contacts, we must then consider whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.' " *OMI Holding*, 149 F.3d at 1091 (quoting *Asahi Metal Indus. Co. v. Superior Court of Calif.*, 480 U.S. 102, 113 (1987)).

**A. Minimum Contacts**

The Court must address the minimum contacts prong of the inquiry first.

In determining whether a defendant has established minimum contacts with the forum state, we examine whether the defendant purposely availed itself of the

3

>privilege of conducting activities within the forum State. A defendant's contacts are sufficient if the defendant purposefully directed its activities at residents of the forum, and . . . the plaintiff's claim arises out of or results from actions by the defendant *himself* that create a substantial connection with the forum state.

*Benton v. Cameco Corp.*, 375 F.3d 1070, 1076 (10th Cir. 2004) (internal citations omitted). Because the Court has not held an evidentiary hearing, all factual disputes must be resolved in Syntroleum's favor when analyzing Fletcher's minimum contacts. *See Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1075 (10th Cir. 1995). Pursuant to this rule, the Court accepts the following facts as true for the purpose of ruling on the matter before the it.

In June 2007, Syntroelum and Tyson Foods entered into a joint venture agreement to construct a renewable synthetic fuels plant. After entering into the agreement, Syntroleum was in need of additional capital to fund its ongoing operations and to fulfill its requirements for the joint venture. In October of 2007, Fletcher approached Syntroleum, through its broker, as a "White Squire" to help with its need of additional capital. For about the next month, the two parties negotiated the terms of the investment agreement such as the transaction amounts and the timing of the transactions.

The agreement was negotiated on Syntroleum's behalf primarily from Oklahoma. Syntroleum hired attorney Del Gustafson, who works and resides in Tulsa, Oklahoma, to represent it during the negotiations. Additionally, both Syntroleum's CEO, Gary Roth, and its Senior Vice President of Finance and Acquisitions, Ron Stinebaugh, participated in negotiations from their offices in Tulsa, Oklahoma. Throughout the negotiations, Roth, Stinebaugh, and Gustafson, while located in Oklahoma, exchanged emails, phone calls, and faxes with Fletcher representatives.

On October 31, 2007, Fletcher sent two representatives of Fletcher Asset Management[1] and

---

[1] Fletcher Asset Management, FAM, is Fletcher's authorized investment advisor.

one outside consultant to Syntroleum's Oklahoma offices as part of a due diligence trip. On this trip, representatives of the two parties engaged in substantive, in person negotiations regarding the terms and structure of the proposed agreement. Negotiations between the parties continued until November 18, 2007, when the parties entered into the Agreement. The Agreement was signed on Syntroleum's behalf in Oklahoma by Gary Roth. Under the agreement, the money invested by Fletcher was to be sent to a bank located in Oklahoma.

After signing the Agreement, additional correspondence was sent from Fletcher to Syntroleum. Specifically, Fletcher sent a fax regarding the conditions precedent to the initial investment to Syntroleum's Oklahoma office on April 7, 2008. Subsequently, oral notification regarding Fletcher's refusal to waive any conditions precedent was given by Fletcher's attorney to Del Gustafson. Because of Fletcher's belief that Syntroleum failed to meet all the conditions precedent to the initial investment, the investment was never made and no funds were sent to Syntroleum's Oklahoma bank. On May 27, 2008, Fletcher sent a "Later Investment Notice" via fax to Syntroleum's Oklahoma offices. The fax notified Syntroleum that Fletcher intended to obtain Syntroleum common stock at the discounted rate set forth in the Agreement, even though it never made the initial investment.

It is undisputed by either party that Fletcher has no employees, offices, registered agents, bank accounts, or property in Oklahoma. All of Fletcher's contacts with Oklahoma are a result of its transaction with Syntroleum. It is also undisputed that the Agreement is governed by New York law, was executed on Fletcher's behalf in New York, and provides that New York courts shall have non-exclusive jurisdiction over any dispute arising out of the Agreement.

**1. Minimum Contacts Analysis**

A contract between a resident of the forum state and a out-of-state party, standing alone, does not establish minimum contacts with the forum state. *Burger King* v. Rudzewicz, 471 U.S. 462, 473 (1985). "However, 'with respect to interstate contractual obligations . . . parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation sanctions in the other State for the consequences of their activities.' In a contract case, relevant factors for assessing minimum contacts include 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.' " *Benton*, 375 F.3d at 1077 (internal quotations omitted) (quoting *Burger King*, 471 U.S. at 473, 479). Considering all these relevant factors, the Court finds that Fletcher has established sufficient minimum contacts between itself and Oklahoma.

In *Benton v. Cameco Corp*, the Tenth Circuit analyzed personal jurisdiction in a contract case where the nature and quality of the defendant's contacts with the forum state were extremely similar to Fletcher's contacts in this case. In *Benton*, a Colorado plaintiff sought to assert personal jurisdiction over the defendant, an out-of-state corporation, in Colorado district court. The defendant in *Benton* (1) entered into an agreement with a Colorado resident that set forth the key terms of a joint venture; (2) would have partially performed the transactions under the agreement in Colorado by making payments to the plaintiff in Colorado, however, no payments were ever made; (3) sent employees to Colorado to conduct a due diligence review of the plaintiff's business in connection with the agreement; (4) sent significant correspondence to Colorado; and (5) committed tortious acts by interfering with the plaintiff's business relationships, the effects of which were suffered in Colorado. *Benton*, 375 F.3d at 1076. Additionally, much like Fletcher, the defendant in Benton had no offices, bank accounts, property, or employees in Colorado. *Id*.

The Tenth Circuit stated that *Benton* was a "very close case" and the facts placed it in "the grey area of personal jurisdiction analysis." *Id.* Nevertheless, the Tenth Circuit affirmed the district court's finding that the defendant had sufficient minimum contacts with forum state. *Id*. at 1077. The court in *Benton* found that the business relationship, correspondence, and due diligence trip, in the aggregate, created a connection with the forum state such that the defendant should have reasonably anticipated being haled into court there. *Id.* at 1078. This Court recognizes that the issue of Fletcher's minimum contacts is a "close case" as well. Fletcher argues that none of its contacts with Oklahoma are sufficient to establish minimum contacts. While it might be true that, taken in isolation, none of Fletchers contacts could support a finding of minimum contacts, the Court does not look to each contact individually. *See Id.* Rather, the Court looks at Fletcher's contacts in the aggregate in determining whether Fletcher has the requisite minimum contacts with Oklahoma.

First, Fletcher solicited business from Syntroleum, a resident of the forum state. Syntroelum claims that Fletcher initiated the investment discussions because of its mission to invest in responsible public companies. This solicitation itself is evidence suggesting purposeful availment. *Pro Axess, Inc. v. Orlux Distribution, Inc*., 428 F.3d 1270, 1277 (10th Cir. 2005). In fact, this Court has found that solicitation of a plaintiff's business by an out of state defendant is a significant factor in establishing personal jurisdiction. *See Sheehan Pipe Line Constr. Co. v. Laney Directional Drilling Co.*, 228 F.Supp.2d 1271, 1276 (N.D.Okla.2002).

The correspondence exchanged between Fletcher and Syntroleum both during and after the negotiation of the Agreement provides additional evidence of minimum contacts. *See Benton*, 375 F.3d at 1077. Although the exact number of phone calls, faxes, and e-mails is not made clear through the affidavits and exhibits submitted by Syntroleum, it is clear that on more than a few occasions

7

Fletcher used these methods to send information necessary for the negotiation and performance of the Agreement to Syntroleum officers located in Oklahoma. These types of correspondence, standing alone, are not necessarily sufficient to establish minimum contacts, but they serve as additional proof of Fletcher directing its activities at a resident of the forum state. *See Id.*

Further evidence of Fletcher purposefully availing itself of the privilege of conducting activities in Oklahoma can be found in the due diligence trip. Again, this trip, in isolation, does not establish minimum contacts. *Id.* However, it represents yet another instance in which Fletcher purposefully and knowingly availed itself of a business opportunity in Oklahoma. *See Id.* The trip is especially significant to the Court's minimum contact analysis due to Syntroleum's allegation that substantive, in person, contract negotiations took place during Fletcher's visit to Oklahoma.

Finally, the agreement itself called for a continuing business relationship between Fletcher and Syntroleum. The agreement was executed on Syntroleum's behalf by Gary Roth in Oklahoma. The agreement required a continuing relationship between the parties for at least a two year period. Over that time period, Fletcher would have the opportunity and sometimes the obligation to invest substantial amounts of money and in return receive a substantial amount of stock in an Oklahoma company. Furthermore, the agreement required Fletcher to send all of its investments to a bank located in Oklahoma. By entering into the Agreement with Syntroleum, Fletcher reached out beyond its own country and created continuing relationships and obligations with a resident of Oklahoma. *See Burger King*, 471 U.S. at 473. This continuing relationship is more evidence of Fletcher's purposeful availment.

Similar to the defendant's contacts in *Benton*, Fletcher's contacts with Oklahoma are not so random, fortuitous, and attenuated that it should not reasonably anticipate being haled into court in

Oklahoma. *See Benton*, 375 F.3d at 1077-78. Fletcher's contacts are not the result of "the mere unilateral activity" of Syntroleum. *See World-Wide Volkswagen*, 444 U.S. at 298 (holding that jurisdiction over the defendant was improper when its only contacts with the forum state resulted from unilateral activity of the plaintiff). Instead, Fletcher purposefully and repeatedly directed its activities at residents of Oklahoma and litigation resulted from the alleged injuries that arose out of those activities. In the aggregate, Fletcher's solicitation, negotiations, correspondence, due diligence trip, and the Agreement itself, created a connection with the Oklahoma such that it should have reasonably anticipated being haled into court there. Hence, Fletcher has sufficient minimum contacts to support an exercise of personal jurisdiction.

**B. Traditional Notions of Fair Play and Substantial Justice**

Even though the Court finds there are sufficient minimum contacts between Fletcher and Oklahoma, the Due Process Clause requires the Court to ensure that the exercise of personal jurisdiction over Fletcher would not "offend traditional notions of fair play and substantial justice." *OMI Holdings, Inc.*, 149 F.3d at 1091. The question under this standard is "whether a district court's exercise of jurisdiction over a defendant with minimum contacts is reasonable in light of the circumstances surrounding the case." *Id*. To determine whether the exercise of jurisdiction would be reasonable, the Court must consider "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies." *Id.* at 1095. Furthermore, an interplay exists between the minimum contacts and the reasonableness prongs of the personal jurisdiction analysis.

9

> [T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing of [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of [minimum contacts].

*Id*. at 1092 (quoting *Ticketmaster-New York, Inc. v. Alito*, 26 F.3d 201, 210 (1st Cir. 1994)).

The Court again finds the Tenth Circuit case *Benton v. Cameco Corp*. as the most instructive case for this prong of the jurisdictional analysis. In *Benton*, a Colorado resident entered into a contract with a Canadian corporation and the contract was governed by Canadian law. After discussing each of the five reasonableness factors, the court found that an exercise of personal jurisdiction by the Colorado district court would offend traditional notions of fair play and substantial justice. *Benton*, 375 F.3d at 1079-81. In its analysis, the Tenth Circuit focused on the fact that there was a limited showing of minimum contacts, thus the defendant did need to make "a particularly strong showing in order to defeat jurisdiction under this reasonableness inquiry." *Id*. at 1080. Also important to the court was the fact that the dispute was not governed by Colorado law. *Id*. at 1079-80. Analogously, Fletcher is a foreign company with limited minimum contacts with Oklahoma and the agreement is governed by New York law. The Court considers these two factors to be central to the reasonableness analysis in this case as well, and finds that exercising jurisdiction over Fletcher would be unreasonable.

### 1. Burden on Defendant of Litigating in the Forum

It is undeniable that litigating in Oklahoma would burden Fletcher. Although not dispositive, " the burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction . . ." *OMI Holdings, Inc.*, 149 F.3d at 1096 (quoting *Asahi*, 480 U.S. at 114). Fletcher maintains no offices, owns no property, has no employees,

10

and conducts no business in Oklahoma. Furthermore, none of Fletcher's evidence or witnesses are located in Oklahoma. This factor certainly weighs against an exercise of personal jurisdiction over Fletcher.

### 2. Forum State's Interest in Adjudicating the Dispute

"States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors. *Id*. This interest, however, is minimized when the law of another state or country will govern the dispute. *See TH Agriculture & Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d 1282, 1294 (10th Cir. 2007); *Benton*, 375 F.3d at 1079. Here, Syntroleum is an Oklahoma company, but New York law governs the Agreement pursuant to the express choice of law clause. As a result, Oklahoma's interest in adjudicating the dispute is somewhat diminished. When presented with the same situation in *Benton*, the court found that this factor did not favor either party. *Benton*, 375 F.3d at 1079. Accordingly, this factor is essentially a tie and neither weighs in favor nor against an exercise of personal jurisdiction over Fletcher.

### 3. Plaintiff's Interest in Convenient and Effective Relief

Under this factor, the Court must determine "whether the Plaintiff can receive convenient and effective relief in another forum." *OMI Holdings, Inc.*, 149 F.3d at 1097. Although Syntroleum would obviously prefer to litigate this dispute in Oklahoma, it can receive convenient and effective relief in New York. First, New York law governs any dispute that arises out of the Agreement. Second, Syntroleum already consented to jurisdiction in New York through the non-exclusive forum selection clause contained in the agreement. The Court would be hard-pressed to find that Syntroleum can not obtain effective relief in New York when it has already voluntarily consented to jurisdiction there. Syntroleum has made no showing that litigating in New York would cause it

undue hardship. *See Id.* at 1097 (finding this factor weighs heavily when burden forcing a plaintiff to litigate in another forum is so overwhelming as to practically foreclose pursuit of the lawsuit). Thus, this factor weighs against an exercise of personal jurisdiction over Fletcher.

### 4. Interstate Judicial System's Interest in Obtaining Efficient Resolution

"This factor asks 'whether the forum state is the most efficient place to litigate the dispute. Key to the inquiry are the location of the witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation.' " *Benton*, 375 F.3d at 1080 (internal citations omitted) (quoting *OMI Holdings, Inc.*, 149 F.3d at 1097). The location of witnesses and where the underlying wrong occurred does not heavily favor Oklahoma as the most efficient place to litigate. The witnesses in this case are scattered across the country, residing in Oklahoma, New York, Bermuda, and California. The alleged wrong, the failure to invest money, took place partially in Oklahoma, where the money was to be sent, and partially in New York, where the decision was made. The New York choice of law clause weighs against Oklahoma as the most effective place to litigate the matter, because New York courts could more effectively interpret its own state's law. Finally, and most importantly, litigation in Oklahoma would most likely *create* rather than *prevent* piecemeal litigation. A lawsuit between the same two parties and regarding the exact same transaction is currently pending in the Southern District of New York. Because the parties agreed to New York law and to non-exclusive jurisdiction there, New York, and not Oklahoma, is the most efficient place to litigate this case. If this Court were to exercise jurisdiction over Fletcher, the parties would be involved in litigation regarding the same transaction in two different states. This would not be convenient or effective for anyone involved in the matter. Therefore, this factor weighs heavily for Fletcher.

12

### 5.  State's Interest in Furthering Fundamental Substantive Social Policies

This factor "focuses on whether the exercise of personal jurisdiction by [the forum] affects the substantive social policy interests of other states or foreign nations. *OMI Holdings, Inc.*, 149 F.3d at 1097. Although Fletcher is a Bermuda company, the exercise of jurisdiction over it would not interfere with Bermuda's sovereignty or other social policies. Bermuda law does not govern this dispute, Fletcher chose to conduct business with a forum resident, and Fletcher has consented to jurisdiction in the United States. *See Benton*, 375 F.3d at 1080. Consequently, this factor weighs against Fletcher.

An analysis of the reasonableness factors makes clear that an exercise of jurisdiction over Fletcher would offend the traditional notions of fair play and substantial justice. Three of the five factors heavily favor Fletcher. The Court finds the New York choice of law and the non-exclusive forum selection clause to be especially significant in this determination. Furthermore, litigating what is essentially the same case in both Oklahoma and New York would be an extremely inefficient and complex method of resolving the dispute. Because of its limited contacts with Oklahoma, Fletcher was not required to make a strong showing in order to defeat jurisdiction under this prong. The Court finds that Fletcher has made such a showing and that an exercise of jurisdiction by this Court would be inappropriate.

## II. Objections to Affidavits

It is well settled that the court may consider affidavits and other written materials in resolving a motion made pursuant to Rule 12(b)(2). *Bell Helicopter Textron, Inc. v. Heliqwest Intern., Ltd.*, 385 F.3d 1291, 1295 (10th Cir. 2004). Fletcher objects to the affidavits of Gary Roth and Ron Stienbaugh [Docket Nos. 31-4 & 31-2] which were submitted as exhibits to Syntroleum's Response

Brief. Fletcher alleges, among other things, that the affidavits contain assertions that are irrelevant, hearsay, vague, and consist of impermissible legal conclusions. Although the affidavits could be more specific regarding the amount of correspondence that occurred between the parties during negotiations, the Court finds the facts asserted throughout are specific enough to provide the Court with the information necessary to rule on the Motion to Dismiss. The Court has not held an evidentiary hearing and must resolve all doubts and make all reasonable inferences in favor of the plaintiff. *Intercon, Inc.*, 205 F.3d at 1247. Accordingly, any doubts relating to the affidavits, including whether the information they contain could be presented in admissible form at a hearing, are resolved in Syntroleum's favor. As such, the Court will consider any relevant information contained within the affidavits in question.

## CONCLUSION

For the reasons asserted above Defendant's Motion to Dismiss [Docket No. 21] is GRANTED, therefore the alternative Motion to Transfer Venue [Docket No 22] is MOOT. Additionally, Defendant's Objection to the Affidavits of Ron Stienbaugh and Gary Roth [Docket No. 35] is DENIED.

James H. Payne
United States District Judge
Northern District of Oklahoma